IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| United States of America, ) | |
| ) | |
| Plaintiff, ) | **ORDER DENYING DEFENDANTS'** |
| ) | **MOTIONS TO SUPPRESS AND** |
| vs. ) | **MOTION IN LIMINE** |
| ) | |
| Javaar Yavonnie Kalem Watkins and ) | |
| Teeanthony Tygemo Watkins, ) | Case No. 1:21-cr-00010 |
| ) | |
| Defendant. ) | |

Before the Court is "Defendant Javaar Watkins' Motion in Limine RE: Allowing Javaar's Eyewitness Expert to Testify at Trial" filed on January 12, 2022.[1] See Doc. No. 91. Also before the Court are Defendants Javaar Watkins and Teeanthony Watkins motions to suppress eyewitness identifications. See Doc. Nos. 94 and 102. The Government filed responses in opposition to the motion in limine as well as the motions to suppress on January 25, 2022, and February 1, 2022, respectively. See Doc. Nos. 101 and 109. Defendant Javaar Watkins filed a reply regarding the motion in limine on February 1, 2022, and a reply as to the motion to suppress on February 8, 2022. See Doc. Nos. 111 and 124. For the reasons set forth below, the Court denies the motions.

I. **BACKGROUND**

On November 6, 2020, the Defendants Javaar Yavonnie Kalem Watkins and Teeanthony Tygemo Watkins were charged by way of criminal complaint with the offense of possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(9), 924(a)(2), 924(e), and 2. See Doc. No. 1. Shortly thereafter, on January 14, 2021, the Defendants were charged in an

---

[1] Defendant Teeanthony Watkins joined in Javaar Watkin's motion in limine on January 18, 2022. See Doc. No. 94.

1

indictment with the offense of possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(9), 924(a)(2), 924(e), and 2. See Doc. No. 31.

This case arises out of a shooting that took place on September 27, 2020, at 721 N. 3rd Street, Apt. 5, in Bismarck, North Dakota, when two men entered the apartment and fired at two individuals, injuring J.J.  J.J. was taken to a local hospital due to the injuries he sustained.  K.J. was also present when the shooting occurred on September 27, 2020.  See Doc. No. 101-1.  At the crime scene, officers located two different caliber spent shell casings (9mm and .45 caliber).  See Doc. No. 1-2.  The record reveals the Defendants had a confrontation with K.J. and J.J. in the parking lot of Borrowed Bucks Roadhouse the night before the shooting.  Either during or after the confrontation, J.J. picked up a cell phone which belonged to one of the Defendants.  See Doc. No. 109-1, p. 2.

Shortly after the September 27, 2020 incident, Detective Lance Allerdings, with the Bismarck Police Department, met with J.J., while he was hospitalized.  At that time, J.J. indicated he did not know who shot him, but recalled the suspects were two African American men.  See Doc. No. 109-1, p. 5.  On October 1, 2020, Detective Allerdings again interviewed J.J. while he was still hospitalized.  At this time, J.J. provided more detailed descriptions of the suspects' clothes and physical characteristics, including that the man who shot him has lighter skin and the other man had darker skin.  Id. at 6-7.

At the suppression hearing on November 23, 2021,[2] Detective Allerdings testified he presented J.J. (who remained in the hospital) with a photo lineup, containing six (6) photos on October 2, 2020.  See Doc. No. 100, pp. 59-61.  J.J. selected photo #5 of the photo lineup, stating he was fifty percent (50%) certain that was the individual who shot him.  Id.  Photo #5 was not

---

[2] The Defendants filed earlier suppression motions in this case.  See Doc. Nos. 65 and 69.  The Court held a hearing on those earlier suppression motions on November 23, 2021.  See Doc. No. 85.

either of the Defendants. Id.  Detective Allerdings further testified that on October 8, 2020, he again showed J.J. two separate photo arrays:  one containing Defendant Javaar Watkins' photo and one containing Defendant Teeanthony Watkins' photo.  J.J. identified Defendant Javaar Watkins in the first photo array (Doc. No. 98-1) and Defendant Teeanthony Watkins in the second photo array (Doc. No. 103-1).  Id. at 61, 70-71. Detective Allerdings testified K.J., who was present at the September 27, 2020 incident, also positively identified Javaar and Teeanthony from the photo lineups as the individuals who attacked J.J. and K.J. on September 27, 2020.  See id. at 71.  K.J. and J.J. also consistently reported to Detective Allerdings the men who entered the apartment on September 27, 2020, commented and inquired about the whereabouts of a cell phone.  See Doc. No. 109-1, p. 2.

At the suppression hearing, Detective Allerdings further testified the Bismarck Police Department has protocols in place for conducting identifications based upon photo arrays.  Id. at 63.  For example, Detective Allerdings testified that officers are to include at least five (5) filler pictures in the array, instructions are to be provided to the person making an identification, and the alleged suspect should not unduly stand out in the array.  Id. at 63-64.

## II.    LEGAL DISCUSSION

The pending motions all orbit around the photo array identifications of both Javaar Watkins and Teeanthony Watkins made by J.J. and K.J.  In their motions to suppress, the Defendants seek to exclude the photo array identifications made by J.J. and K.J. as such identifications were obtained using unnecessarily suggestive procedures resulting in a substantial likelihood of misidentification in violation of the Due Process Clause.  See Doc. Nos. 95 and 103.  In the motion in limine, the Defendant Javaar Watkins requests the Court allow Professor Andre Kehn

("Professor Kehn") to present expert testimony concerning the science of eyewitness identification and memory at trial. Specifically, the Defendants contend Professor Kehn is prepared to explain that the research findings concerning eyewitness identification and memory have been tested, peer-reviewed, published and have gained general acceptance in the field of applied cognitive psychology. See Doc. No. 91. The Government opposes both motions. See Doc. Nos. 101 and 109. The Court first addresses the Defendants' motion to suppress evidence of the photo array identifications.

### A.      MOTIONS TO SUPPRESS

In the Defendants' motions to suppress, they seek to exclude evidence of the photo array identification of them made by K.J. and J.J. as a violation of the Due Process Clause. The Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. In *Lisenba v. California*, the United States Supreme Court described the requirement of Fourteenth Amendment due process is to prevent "fundamental unfairness in the use of evidence." 314 U.S. 219, 236 (1941). Generally, the reliability of properly admitted evidence, including an eyewitness identification, does not implicate constitutional considerations, and instead is a matter for the jury. Foster v. California, 394 U.S. 440, 443 (1969). However, in *United States v. Wade* and its companion cases, the United States Supreme Court departed from the rule that "the manner of an extra-judicial identification affects only the weight, not the admissibility, of identification testimony at trial." Simmons v. United States, 390 U.S. 377, 382 (1968).

In general, identification testimony from a person who has witnessed a crime is admissible and it is for the jury to assess the credibility of the witness and the worthiness of the testimony. Sanchell v. Parratt, 530 F.2d 286, 292 (8th Cir. 1976). However, when police arranged identification procedures raise doubts as to the reliability of the testimony, a defendant's due process rights are implicated. Perry v. New Hampshire, 565 U.S. 228, 232 (2012).

In *Neil v. Biggers*, the Supreme Court addressed the issue of whether an identification, and the circumstances surrounding it, failed to comport with due process requirements. 409 U.S. 188, 196 (1972). The *Biggers* Court noted the principles of the Supreme Court's previous decisions made it apparent the primary evil to avoid is the "substantial likelihood of irreparable misidentification." Id. at 198. Unnecessarily suggestive "confrontations" are disapproved because they drastically increase the likelihood of misidentification. Id. However, the Court found evidence of a suggestive confrontation alone does not violate due process. Therefore, the Court asked whether under the totality of the circumstances "the identification was reliable even though the confrontation procedure was suggestive." Id. at 199. To determine whether an identification can be considered reliable when the procedure to elicit the identification was suggestive, the Supreme Court in *Biggers* considered five factors, including

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Id. at 199-200. Ultimately, the *Biggers* Court concluded the identification at issue was reliable because the witness-victim spent considerable time with her assailant and did so under adequate lighting; the witness was not a casual observer; the description to the police was thorough; and the witness was confident in her identification. Id. at 200. Weighing these facts, the Supreme Court found there was "no substantial likelihood of misidentification." Id. at 201. Therefore, even

5

though the identification procedure was suggestive, the identification was sufficiently reliable as not to violate the defendant's due process rights. Id. (concluding the evidence was properly allowed to go to the jury).

It is well-established that this Court is to employ a two-step analysis when a defendant challenges a police-arranged out-of-court identification procedure. Perry, 565 U.S. at 239-40. First, the court must determine whether the procedure was impermissibly suggestive and, if so, whether it was so suggestive as to raise a very substantial likelihood of misidentification. Biggers, 409 U.S. at 198; United States v. Wilson, 787 F.2d 375, 385 (8th Cir. 1986). Second, if the procedure was unnecessarily suggestive, the court must determine whether, under the totality of the circumstances, the identification was independently reliable. Manson v. Brathwaite, 432 U.S. 98, 114 (1977); United States v. Pickar, 616 F.3d 821, 827 (8th Cir. 2010). Factors to be considered in evaluating a witness' ability to make an accurate identification include: (1) the opportunity of the witness to see the accused at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of his prior description of the accused; (4) the level of certainty demonstrated at the identification; and (5) the time between the crime and identification. Pickar, 616 F.3d at 827 (citing Brathwaite, 432 U.S. 114). "Reliability is the linchpin" of the evaluation. Brathwaite, 432 U.S. at 114. Only when the indicators of a witness' ability to make a reliable identification are outweighed by the corrupting effect of an unduly suggestive law enforcement identification procedure should the evidence be suppressed. Perry, 565 U.S. at 239.

The Court begins its analysis to determine whether the out-of-court identifications of the Defendants were so suggestive as to violate due process by recognizing the charges against the Defendants are not based upon any alleged conduct by the Defendants directly arising from the shooting of J.J. Instead, the Defendants are charged with "Felon or Other Prohibited Person in

6

Possession of Firearm or Ammunition" in violation of 18 U.S.C. § 922(g).  For a jury to find the Defendant guilty of this crime, the Government need only to prove beyond a reasonable doubt that:

1) the defendants had been convicted of a crime punishable by imprisonment for more than one year;

2) the defendants knowingly possessed a firearm or ammunition;

3) at the time the defendants knowingly possessed the firearm and ammunition, they knew they had been convicted of a crime punishable by imprisonment for more than one year; and

4) the firearm or ammunition were transported across a state line at some time during or before the defendants' possession of it.

See 18 U.S.C. § 922(g)(1); Model Crim. Jury Instr. 8th Cir. § 6.18.22A (2020).  As outlined, the Defendants are not charged with a crime that requires the Government to prove either J.J. or K.J. identified the Defendants.  As the Government notes in its response to the motion in limine: "the defendants could be convicted of the charged offense entirely without the eyewitness identification evidence" the Defendants are seeking to suppress.  See Doc. No. 101, p. 6.

Against this backdrop, the Court turns to consider whether the identifications of the defendants by K.J. and J.J. were reliable.  To make such determination, the Court first considers whether the procedure employed for the identifications were impermissibly suggestive and, if so, whether it was so suggestive as to raise a very substantial likelihood of misidentification.  Biggers, 409 U.S. at 198; Wilson, 787 at 385.  The Defendants must first establish the photo arrays utilized in the investigation were "impermissibly suggestive." United States v. Martin, 391 F.3d 949, 952 (8th 2004).  The Eighth Circuit has instructed that photo arrays, similar to the ones used in this

case, do not need to be perfect to not be impermissibly suggestive. Instead, reasonable variations between photos of suspects in photo arrays are permissible, including differences in hair length, facial hair, clothing, backgrounds, and lighting. See United States v. Gilbert, 721 F.3d 1000, 1007 (8th Cir. 2013) (concluding a photo array with six subjects with similar skin tones, similar hair, similar background, but with the defendant being the only one not wearing a shirt, was not impermissibly suggestive); United States v. Rose, 362 F.3d 1059, 1066 (8th Cir. 2004) (concluding a photo array was not impermissibly suggestive where the defendant was the only person depicted with eyes closed and shorter hair).

Here, the photographs used in photo arrays were sufficiently similar so as not be impermissibly suggestive. The persons in the photographs all have a similar hair style, with similar skin tones, similar features, similar backgrounds, and similar clothing. For the lineup which included Defendant Javaar Watkins, the individuals each had tattoos on their necks (a physical characteristic described by both K.J. and J.J.). Accordingly, the Defendants have not demonstrated anything about the photo lineups that would make it impermissibly suggestive. See Biggers, 409 U.S. at 198.

The Court further concludes that even if it could be said that the photo array utilized by Detective Allerdings was unduly suggestive, the Court finds the identifications were independently reliable. See Biggers, 409 U.S. at 198; Brathwaite, 432 U.S. at 114. The record reveals J.J and K.J. interacted with the Defendants earlier in the night at Borrowed Bucks and were eventually in an altercation with the Defendants in the parking lot of Borrowed Bucks. Unquestionably, that earlier encounter, as well as the shooting at the apartment, provided K.J. and J.J. with ample opportunity to see the Defendants. Further, both K.J. and J.J. consistently, and on multiple occasions, identified Javaar Watkins as having lighter skin, and were both certain of the

identifications made on October 8, 2020.  Moreover, when J.J. identified Defendant Javaar Watkins from the photo array, he was certain of his identification, stating: "That's that motherfucker right there" while pointing to Defendant Javaar Watkin's photo.  See Doc. Nos. 109-1, p. 11, and 127.  Based upon this evidence, the Court concludes that even if the identification procedure utilized by Detective Allerdings was unduly suggestive, the identifications were independently reliable and thus admissible. Brathwaite, 432 U.S. at 114.

The Court's conclusion that the identification evidence should not be suppressed is buttressed by the United States Supreme Court's discussion in *Perry* of other safeguards that are built into our adversary system that can be employed to caution jurors "against placing undue weight on eyewitness testimony of questionable reliability."  Perry, 565 U.S. at 245-47.  Such protections include the Sixth Amendment right to confront the eyewitness, a defendant's right to effective counsel who can expose flaws in the eyewitness' testimony during cross-examination, the ability of defense counsel to focus the jury's attention on the fallibility of such testimony during opening and closing arguments,  eyewitness specific jury instructions which "warn the jury to take care in appraising identification evidence," as well as the rules of evidence which permit trial courts to exclude relevant evidence if its probative value is outweighed by either its prejudicial impact or potential for misleading the jury.  Id.  Most important, and perhaps the most significant safeguard which impedes convictions based on dubious identification evidence, is the constitutional requirement that the government prove the defendants' guilt beyond a reasonable doubt. Id. at 247.

Specific to this case, this Court will employ the Eighth Circuit Model Jury Instruction § 4.08, which exhaustively instructs jurors as to the reliability of eyewitness testimony. Specifically, the instruction cautions that "[t]he value of identification testimony depends on the opportunity

the witness has to observe the offender at the time of the offense and to make a reliable identification later." Model Crim. Jury Instr. 8th § 4.08 (2020). The instruction clearly instructs jurors that "[e]yewitness identification must be evaluated with particular care." Id. In fact, Section 4.08 instructs on those factors [that] bear on 'the likelihood of misidentification'" such as "the passage of time between exposure to and identification of the defendant, whether the witness was under stress when he first encountered the suspect, how much time the witness had to observe the suspect, how far the witness was from the suspect, whether the suspect carried a weapon, and the race of the suspect and the witness." See Comments to Model Crim. Jury Instr. 8th § 4.08 (2020). Suffice it to say, there is no case law that requires the automatic exclusion of eyewitness identification that may have involved a suggestive photo array. Instead, the Court needs to consider "the totality of the circumstances." More important, the Court considers all of the other safeguards as recognized by the Supreme Court in *Perry v. New Hampshire* that can more than adequately protect the Defendant's due process rights under the circumstances here. Most, if not all, of those safeguards will be available in this case.

Accordingly, given the particular circumstances of this case and the inconsequentiality of the identifications to the Government's burden of proof, the Court declines to suppress the eyewitness identification by K.J. and J.J. of the Defendants. The Court then turns to consider whether Professor Kehn's testimony should be admitted pursuant to Federal Rule of Evidence 702.

### B. MOTION IN LIMINE

In his motion in limine, Defendant Javaar Watkins requests the Court permit expert testimony from Professor Andre Kehn concerning the science of eyewitness identification and memory. The Government opposes the motion, contending the proposed testimony does not meet

the criteria for admissibility pursuant to Federal Rule of Evidence 702 as it will not substantially aid the jury in understanding or determining a fact in issue, and the identification at issue is a minimal portion of the government's case.  Alternatively, the Government argues the proposed expert testimony is inadmissible pursuant to Federal Rule of Evidence 403 because the prejudicial effect outweighs any probative value.  Specifically, the Government states its case is "not dependent at all, let alone 'exclusively' dependent, upon the eyewitness identification evidence." See Doc. No. 101, p. 5.

Rule 702 of the Federal Rules of Evidence sets for the standard for expert testimony, allowing an expert to testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 requires the trial judge act as a "gatekeeper," admitting expert testimony only if it is relevant and reliable.  See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993).  The trial court is given broad discretion in its determination of reliability.  Kumho Tire Co, Ltd. v. Carmichael, 526 U.S. 137, 142 (1999).  The Eighth Circuit Court of Appeals has established three prerequisites that must be satisfied for expert testimony to be admitted under Rule 702:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact.  This is the basic rule of relevancy.  Second, the proposed witness must be qualified to assist the finder of fact.  Third, 'the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires . . . .'

Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir. 2001) (internal citations omitted).

The United States Supreme Court has held the Federal Rules of Evidence, especially Rule 702, assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.  See Daubert, 509 U.S. at 597.  Further, the Supreme Court has held the principles set forth in *Daubert* apply to all expert testimony.  Kumho Tire, 526 U.S. at 141 ("We conclude that *Daubert's* general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge."); accord Jaurequi v. Carter Mfg. Co., Inc., 173 F.3d 1076, 1082 (8th Cir. 1999).

The Defendants submitted the curriculum vitae of Professor Kehn along with their motion in limine, which the Court thoroughly reviewed.  See Doc. No. 91.  Professor Kehn is the Director of Forensic Psychology Programs at the University of North Dakota.  Professor Kehn has been employed as a Professor of Psychology with the University of North Dakota for 12 years.  At the University of North Dakota, Professor Kehn teaches psychology classes, advises doctoral and masters students, gives presentations about forensic psychology, and is featured as a contributing author in different publications.  While this Court has little doubt Professor Kehn is an expert in the field of applied cognitive psychology, the Government contends Professor Kehn's testimony will not substantially aid the jury in understanding or determining a fact issue in this case and, therefore, does not meet the test for admission under Rules 702 and 403.  See Doc No. 101.

As the Court discussed above, the jury in this case will be tasked with determining whether the Defendants possessed a firearm or ammunition as felons or prohibited persons.  See 18 U.S.C. § 922(g).  The Government has stated, and it is clear from the record, that the identifications of the Defendants by K.J. and J.J. play a minimal role in the Government's case-in-chief to prove the Defendants violated 18 U.S.C. § 922(g).  Moreover, according to Detective Allerdings report, the

individuals who entered the apartment and shot J.J. on September 27, 2020, made comments aimed at locating a cell phone, presumably the cell phone K.J. had picked up at Borrowed Buck's earlier in the night.  See Doc. No. 109-1.

The Defendants indicate Professor Kehn's testimony would help educate the jury on eyewitness reliability as he would testify about factors that should be considered when evaluating the eyewitness identification.  However, the Eighth Circuit has declared that "the general reliability of eyewitness identification is a matter of common understanding."  Martin, 391 F.3d at 954.  Moreover, it is well-established an expert witness is not permitted to offer an opinion as to the believability or truthfulness of a witness's story.  See United States v. Nickelous, 916 F.3d 721, 724 (8th Cir. 2019).  Additionally, the Eighth Circuit has held exclusion of eyewitness expert testimony was not an abuse of the district court's discretion when corroborating evidence of an identification was present.  United States v. Davis, 260 F.3d 965, 970 (8th Cir. 2001).  Here, K.J. and J.J. could have reasonably concluded the individuals who entered the apartment and shot J.J. on September 27, 2020, were the same individuals J.J. and K.J. had encountered only hours earlier at Borrowed Bucks based upon the individuals' comments about a phone's whereabouts.  Such corroborating evidence lessens the import of the photo array identifications.

The Court is also well-aware it is within the province of the jury to evaluate and determine the credibility of witnesses.  When the photo array identifications do not address an element of the charged offense, as in this case, the Court is hesitant to allow expert testimony regarding the fallibility of eyewitness identifications.  In fact, the advisory committee notes to Rule 702 make it clear that when a juror would be able to make a commonsense determination of an issue, the expert testimony should be excluded as superfluous.  United States v. Kime, 99 F.3d 870, 884 (8th Cir. 1996).

In *Perry v. New Hampshire*, the Supreme Court stated the use of "expert testimony on the hazards of eyewitness identification evidence" may be admitted in appropriate cases, specifically noting it is appropriate to admit expert testimony in cases involving eyewitness identification of strangers. 565 U.S. at 247. However, as the charges in this case relate to the possession of firearms and ammunition, this is simply not one of those cases in which expert testimony regarding eyewitness identifications is appropriate. The Court is mindful that in any number of cases, expert testimony regarding eyewitness identifications could be useful to the jury in deciding factual issues, particularly when the identity of the defendant is an element of the offense charged or when the eyewitness identification is uncorroborated. However, this is simply not one of those cases. Moreover, the Court has significant concerns that any probative value of Professor Kehn testimony is outweighed by the danger of it misleading the jury in this case. See Fed. R. Evid. 403. Again, the Court emphasizes, this is not a case of mistaken identity or where the only evidence against the Defendant is uncorroborated eyewitness identifications, but instead the Defendants are charged with being felons or prohibited persons in possession of firearms or ammunition. Accordingly, the Court finds Rule 702 of the Federal Rules of Evidence is not satisfied and concludes testimony from Professor Kehn is not admissible at trial.

### B. CONCLUSION

The Court has carefully reviewed the entire record, the parties' arguments, and the relevant case law. For the reasons outlined above, the Defendants' motions to suppress evidence are **DENIED** (Doc. No. 94 and 102) and Defendant Javaar Watkins' motions in limine, in which Defendant Teeanthony Watkins joined, (Doc. Nos. 91 and 92) is **DENIED**. Defendant Teeanthony Watkin's request for a hearing is also **DENIED** (Doc. No. 105).

**IT IS SO ORDERED**.

Dated this 9th day of February, 2022.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court
